IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                                        Civ. No. 11-1066

$103,520.00 IN UNITED STATES CURRENCY,

$58,360.00 IN UNITED STATES CURRENCY,

    *Defendant*s,

and

MY MI HONG, AND
KALVIN LEE,

    *Claimants.*

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff states:

**JURISDICTION AND VENUE**

1.    This is a civil action *in rem* for forfeiture of Defendant property which has been located and will be arrested by execution of a Warrant for Arrest in the District of New Mexico; and during the pendency of this action Defendant, or its equivalent or proceeds thereof, will be subject to the jurisdiction of this Court.

2.    The United States District Court for the District of New Mexico has exclusive, original jurisdiction under 28 U.S.C. §§ 1345, 1355 and 1356.

3.    Venue is proper under 28 U.S.C. §§ 1355 and 1395.

4.    The "res" or property which is the subject of this action consists of:

    (a).    One Hundred Three Thousand Five Hundred Twenty ($103,520.00); and

    (b).    Fifty-Eight Thousand Three Hundred Sixty ($58,360) in U.S. Currency; (hereafter referred to as "Defendant Currency").

### PARTIES AND CLAIMANTS

5.    The following persons may claim an interest in Defendant Currency:

    (a).    My Mi Hong at 10055 Saint-Urbain Street, Montreal, QC H3L 2T5 CANADA;

    (b).    Kalvin Lee at 6439 Newman Blvd., Montreal, QC H4E 4L9 CANADA.

### FACTS

6.    On October 29, 2010, the Amtrak Police Department reviewed two Amtrak train Passenger Name Records (PNR), Kalvin Lee and My Mi Hong. The PNRs for Lee and Hong reflected one-way tickets for each were purchased on October 28, 2010 – the day of departure.

7.    The Federal Bureau of Investigation (FBI) and Drug Enforcement Administration (DEA) were called to the Albuquerque Amtrak train station where the train carrying passengers Lee and Hong would be making a scheduled stop. Lee and Hong were approached by Amtrak police. Amtrak police requested and received consent to speak with them.

8.    Lee and Hong were directed to the train room where their seats, identifications, and tickets were located. Amtrak Officers informed Lee and Hong of their Amtrak duties including looking for any illegal contraband such as drugs, weapons, and large amounts of money. Officers asked Lee and Hong if they had any illegal contraband. Lee and Hong replied

no. Officers requested and received consent from Lee and Hong to a search. In Lee's backpack officers located in a blue bag several bundles of U.S. currency wrapped in rubber bands.

9. Officers asked Lee if the money belonged to him. Lee did not answer. Officers asked Lee a second time if the money belonged to him. Lee replied the money did not.

10. A total of $58,360.00 in U.S. Currency was located in Lee's backpack.

11. Officers asked Hong if she had any large amounts of money in her backpack. Hong replied there was some in her bag.

12. A total of $103,520.00 in U.S. Currency was located in Hong's backpack.

13. Lee and Hong were detained and transported to the Albuquerque FBI office for further investigation.

14. During an interview with Lee, Lee stated he had recently quit his job in Montreal, Canada, where he worked as an IT professional. He quit because he was paid poorly and dissatisfied. After quitting his job, Lee was introduced to an individual who went by the name of Mini Me. Mini Me suggested a way for Lee to make some quick money. Mini Me stated to Lee that the amount of money he could make would depend on the amount he would transport. Lee stated he expected to make anywhere form $2,000 to $4,000. Lee stated Hong was present during this conversation and agreed to accompany Lee with transporting the money. Lee stated he and Hong agreed to split the money earned.

15. Lee stated he was given a phone for Mini Me and told to ignore all calls and messages unless they were from Mini Me, and was told to delete all messages off the phone after reading them. Lee was told that he would be transporting money from New York City to Los Angeles. Lee stated he realized this was illegal.

16.     On or around October 22, 2010, Lee received his first message from Mini Me who instructed Lee and Hong to take a bus from Montreal to Albany, New York, and then to New York City. Hong purchased the train tickets on her credit card. After arriving in New York City, Lee texted his location to Mini Me. Lee stated that shortly after, an individual met with only Lee and delivered $70,000 to him.

17.     Lee stated that he and Hong were then instructed to travel by train to Boston where Hong was told to pick up a package of money. According to Lee, Hong's package contained $100,000.

18.     Lee stated he and Hong were then instructed to travel by train to Chicago and then by taxi to Navperville [Illinois], where they purchased train tickets to Los Angeles. Lee had been instructed to text Mini Me when Lee and Hong arrived in Los Angeles. Lee stated he was never told what the money was for but thought the money was most likely drug-related.

19.     During an interview with Hong, Hong stated she was unsure as to the date she and Lee left Montreal. Hong was also unsure as to what method of travel they took to New York City. Hong stated they traveled to New York City to do some shopping in Times Square. During the course of the interview, Hong could not remember the name of the bus they traveled on to Boston and could not remember the name of the hotel where they stayed in Boston. Hong answered most questions with "I don't know."

20.     Hong later stated the reason they took a taxi from Chicago, IL to Naperville, IL was because they missed their train in Chicago. Hong stated she then purchased Amtrak tickets with the credit card that was in her backpack. When FBI Agents retrieved the credit card from Hong's backpack, it did not match the credit card used in the Amtrak system. An FBI agent

4

asked Hong if she knew a person named Juliana Law. Hong's face flushed and she admitted that she did not purchase the train tickets, but she asked Law to purchase the train tickets for her.

21.     Hong stated they were traveling to Los Angeles to meet with Lee's friend and then travel to Las Vegas to go gambling. She also stated they brought $170,000 with them to gamble with.

22.     Later, Hong changed her statements. Hong stated that several weeks prior, Lee asked her if she wanted to travel to the U.S. with him to make some money. Hong agreed and stated that Lee had the details of the money transport. Hong admitted that the $170,000 was a large amount of money but that she thought it was not illegal because it was not drugs.

23.     Lee and Hong had no documentation with them showing the source of the Defendant Currency.

24.     Lee and Hong have no ownership interest in the Defendant Currency.

### CLAIM FOR RELIEF

25.     Defendant currency is subject to arrest and forfeiture to Plaintiff under 21 U.S.C. § 881(a)(6) because it was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

26.     Defendant currency is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(A) because the currency was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960 or is property traceable to such property.

27. Defendant currency is subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(C) because the currency constitutes or is derived from property traceable to a violation of 18 U.S.C. § 1952.

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

KENNETH J. GONZALES
United States Attorney

STEPHEN R. KOTZ
CYNTHIA L. WEISMAN
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, NM  87103-0607
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Federal Bureau of Investigation who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 12/2/2011

Michael D. Talbert, Special Agent
Federal Bureau of Investigation

7